UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANICE DRAPER,<br><br>            Plaintiff,<br><br>      v.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>            Defendant. | No. 1:19-cv-00139-GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF** |

I.    **Introduction**

Plaintiff Janice Draper ("Plaintiff") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income pursuant to Title XVI of the Social Security Act.  The matter is currently before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1]  *See* Docs. 13, 15 and 16.  Having reviewed the record as a whole, the Court finds that the ALJ's decision is supported by substantial evidence and applicable law. Accordingly, Plaintiff's appeal is denied.

///

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge.  *See* Docs. 7 and 8.

1

## II.      Procedural Background

2     Plaintiff filed a prior application for supplemental security income in December 2009.

3  AR 116.  Following a January 2012 hearing, Administrative Law Judge Michael Blume denied

4  the application in February 2012.  AR 116-125.

5     On March 16, 2015, Plaintiff filed the pending application for supplemental security

6  income alleging disability beginning November 13, 2008.  AR 23.  The Commissioner denied the

7  application initially on May 27, 2015, and following reconsideration on August 20, 2015.  AR 23.

8     On October 1, 2015, Plaintiff filed a request for a hearing.  AR 32.  Administrative Law

9  Judge  Matilda Surh presided over an administrative hearing on October 31, 2017.  AR 71-112.

10  Plaintiff appeared and was represented by an attorney.  AR 71.  On February 23, 2018, the ALJ

11  denied Plaintiff's application.  AR 23-31.

12     The Appeals Council denied review on December 10, 2018.  AR 1-6.  On January 30,

13  2019,  Plaintiff filed a complaint in this Court.  Doc. 1.

14

## III.      Factual Background

15

### A.  Plaintiff's Testimony

16     Plaintiff (born December 1964) lived alone[2] in a rent-subsidized apartment.  AR 76,  78.

17  She received food stamps and supported herself by collecting recycling.  AR 78.  Plaintiff

18  completed high school and some college classes.  AR 77.  She did not drive.  AR 88.

19     Plaintiff had minimal work experience.  In 2007 and 2008, she provided in-home support

20  services to her elderly mother.  AR 78-79.  Plaintiff also worked through temporary service

21  agencies providing kitchen help for caterers and assembling prepared foods.  AR 80-81.  About

22  fourteen years before the hearing she briefly worked as a telemarketer.  AR 83.

23     Plaintiff could lift no more than ten or fifteen pounds.  AR 79.  Her children helped her

24  with housework.  AR 85.  Plaintiff used a cane[3] but could not walk more than the four blocks to

25  ///

26

---

27  [2] Although the record indicates that Plaintiff had five children, the youngest of whom was fourteen years old on the hearing date, it is unclear whether any of the children lived with Plaintiff.  AR 85.

28  [3] According to Plaintiff, her doctor prescribed a cane but she had to buy it herself because her insurer would not pay for it.  AR 86.

the bus stop.  AR 85, 87.  Her right hip and left knee "locked up."  AR 85-86.  Plaintiff had carpal

tunnel syndrome but was waiting for a doctor to formally diagnose it.  AR 89.

On a typical day, Plaintiff ate and did light housework.  AR 88.  Sometimes she visited

with friends.  AR 88.  Plaintiff was able to do her own grocery shopping using an electric cart.

AR 88-89.  A podiatrist treated Plaintiff's various foot problems which included hammertoe,

collapsing arches and calluses.  AR 90.  She was awaiting foot surgery.  AR 92.  Plaintiff also had

back pain but her doctors were currently focusing on her feet.  AR 94.

Plaintiff's April 2015 Adult Function Report was generally consistent with her testimony,

but added that Plaintiff's daily activities included bicycling, sewing, and watching television.  AR

280-88.  Plaintiff's July 2015 Exertion Questionnaire reported daily symptoms of fever, dizziness,

nausea, headaches and severe pain.  AR 297-99.

### B.  Medical Records

### 1.  Clinica Sierra Vista

The administrative record includes treatment notes from Clinica Sierra Vista from April

2013 through June 2015.  AR 427-502.  Plaintiff received general medical care on a regular basis.

At her initial appointment Plaintiff complained of chronic daily leg pain that had begun fifteen

years earlier.  AR 493.  The pain was aggravated by walking and relieved by oxycodone (Soma)

and bike riding.  AR 493. In September 2013, William Dixon, P.A., referred Plaintiff to pain

management for complaints of chronic pain.  AR 478.

In June 2014, Plaintiff complained of wrist pain and requested Norco "to take after

work."  AR 468.  Beginning in September 2014, Plaintiff complained of hand pain and numbness,

which was diagnosed as carpal tunnel syndrome.  AR 447.  Plaintiff had complained of dull

aching hip pain extending into the groin beginning in 2008.  AR 453.  In October 2014, Geeta

Ramesh, M.D., noted Plaintiff complained of pain in multiple joints including her hips, shoulders

and knees.  AR 453.  Dr. Ramesh noted a normal hip exam but referred Plaintiff for x-rays.  AR

458.  Left hand x-rays taken in December 2014 showed only minimal degenerative changes; right

hand x-rays were unremarkable.  AR 498-99.

///

On multiple occasions podiatrist Harvey J. Purtz, D.P.M., diagnosed and treated ingrown toenails, calluses and an acquired "claw toe."  AR 435, 439, 462, 477, 483, 486.  On each occasion Dr. Purtz debrided one or more foot calluses and advised Plaintiff to wear different shoes and cushioning insoles.  AR 435.

**2.** **Broken Arm**

From February through April 2014, the emergency department of St. Agnes Medical Center treated Plaintiff for a left styloid radial fracture.  AR 348-413.  Plaintiff's fracture was also reviewed by orthopedic surgeon S.S. Shantharam, M.D., who opined in May 2014 the fracture had healed "just fine" and Plaintiff was neurologically intact, but that Plaintiff would benefit from physical therapy to improve her range of motion.  AR 414.  The record does not include evidence that Plaintiff participated in physical therapy.

**3.** **Dr. Patel**

Beginning in July 2016, Plaintiff received primary care from Surenda Patel, M.D. AR 39-70, 576-83, 618-21.  X-rays of Plaintiff's right shoulder, right hip and left foot were unremarkable except for evidence of old hardware used to repair Plaintiff's fractured femur.  AR 616-17.

**4.** **Dr. Nagata**

In August 2016, Fred H. Nagata, D.P.M., examined Plaintiff following a referral by Dr. Patel.  AR 584.  Dr. Nagata diagnosed calluses and  bilateral bunions.  AR 584.  After debriding the calluses, Dr. Nagata recommended shoes and cushioning insoles to balance her foot and arch. AR 584.

**IV.** **Standard of Review**

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.  "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole."  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla, but less

4

1    than a preponderance.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation

2    omitted).  When performing this analysis, the court must "consider the entire record as a whole

3    and may not affirm simply by isolating a specific quantum of supporting evidence."  *Robbins v.*

4    *Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and internal quotation marks

5    omitted).

6        If the evidence reasonably could support two conclusions, the court "may not substitute its

7    judgment for that of the Commissioner" and must affirm the decision.  *Jamerson v. Chater*, 112

8    F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "[T]he court will not reverse an ALJ's

9    decision for harmless error, which exists when it is clear from the record that the ALJ's error was

10    inconsequential to the ultimate nondisability determination."  *Tommasetti v. Astrue*, 533 F.3d

11    1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

12       **V.**    **The Disability Standard**

13         To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

20         42 U.S.C. §1382c(a)(3)(B).

21        To achieve uniformity in the decision-making process, the Commissioner has established

22    a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§

23    416.920(a)-(f).  The ALJ proceeds through the steps and stops upon reaching a dispositive finding

24    that the claimant is or is not disabled.  20 C.F.R. §§ 416.927, 416.929.

25        Specifically, the ALJ is required to determine: (1) whether a claimant engaged in

26    substantial gainful activity during the period of alleged disability, (2) whether the claimant had

27    medically determinable "severe impairments," (3) whether these impairments meet or are

28    medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P,

Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.  20 C.F.R. § 416.920(a)-(f).

In addition, when an applicant has one or more previous denials of applications for disability benefits, as Plaintiff does in this case, he or she must overcome a presumption of non-disability. The principles of *res judicata* apply to administrative decisions, although the doctrine is less rigidly applied to administrative proceedings than in court. *Chavez v. Bowen,* 844 F.2d 691, 693 (9th Cir. 1988); *Gregory v. Bowen,* 844 F.2d 664, 666 (9th Cir. 1988).

Social Security Acquiescence Ruling ("SSR") 97–4, adopting *Chavez,* applies to cases involving a subsequent disability claim with an unadjudicated period arising under the same title of the Social Security Act as a prior claim in which there has been a final administrative decision that the claimant is not disabled. A previous final determination of non-disability creates a presumption of continuing non-disability in the unadjudicated period.  *Lester v. Chater,* 81 F.3d 821, 827 (9th Cir. 1995). The presumption may be overcome by a showing of changed circumstances, such as new and material changes to the claimant's residual functional; capacity, age, education, or work experience. *Id.* at 827–28; *Chavez,* 844 F.2d at 693.

## VI.    Summary of the ALJ's Decision

The Administrative Law Judge found that Plaintiff had not engaged in substantial gainful activity since the application date of March 16, 2015.  AR 26.  Her severe impairments included history of right femur open reduction internal fixation and history of fracture of the left radial styloid.  AR 26.  None of the severe impairments met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926).  AR 27.

The ALJ concluded that Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b).  AR 27.  Plaintiff had no limitations in sitting, and could stand or walk for six hours in an eight-hour workday.  AR 27.  Plaintiff was limited to occasionally climbing, kneeling and crawling.  AR 27.

///

Plaintiff was able to perform her past relevant work as a companion (DOT No. 309.677-010).  AR 30.  Accordingly, the ALJ found that Plaintiff was not disabled at any time from March 16, 2015, the application date, through February 23, 2018, the date of the decision.  AR 31.

**VII.   Sufficient Evidence Supported the ALJ's Determination**

Plaintiff contends that the ALJ failed to give specific and legitimate reasons for rejecting the opinion of Plaintiff's podiatrist Dr. Nagata.  The Commissioner disagrees.

**A.   Medical Opinions**

**1.   Agency Physicians**

On initial review, surgeon W. Jackson, M.D., concluded that Plaintiff's new application demonstrated sufficient improvement to constitute the material change necessary to overcome the *Chavez* presumption:

> The claimant was denied with the ALJ decision of 2/6/12.  The ALJ found that the claimant had severe right hip pain due to a previously repaired fracture.  She was unable to stand, walk or sit for too long.  The current exams do not demonstrate any hip pain.  The hips have [a full range of motion] and the claimant does not allege difficulties with ambulation or being on her feet according to the [consultative examiner].  The claimant has a history of carpal tunnel syndrome which has been mild and treated with splints.  The claimant did fracture her left radial styloid on 4/9/14. This healed fine according to the [treating physician] and the claimant had [a full range of motion] at the recent [consultative examination]. Her left hand grip was "0" on the Jumar which supports lack of effort on the part of the claimant.  The claimant does have some back pain but has [full range of motion] and [straight leg raising] is normal.  There is no evidence of weakness or sensory loss.
>
> The claimant has clearly seen improvement since the prior ALJ decision, especially in relation to the hip pain.  The claimant's allegation of [carpal tunnel syndrome] is considered but does not add significant additional limitations.  In this case, *Chavez* does not apply as there has been a material change in condition mainly due to improvement of the hips.
>
> Recommend a light [residual functional capacity] with some postural limitations.
>
> AR 141 (typographical and spelling errors corrected).

On reconsideration, internist E. Wong, M.D., agreed that Plaintiff retained a light residual functional capacity.  AR 151.

///

1

### 2.  **Consultative Orthopedic Evaluations**

2      In May 2015, orthopedist Dale H. Van Kirk, M.D., performed a consultative orthopedic

3  examination.  AR 421-26.  Plaintiff was able to sit comfortably in a chair, get up and out of the

4  chair, walk around the examining room, and get on and off the examining table without difficulty.

5  AR 423.  Plaintiff was able to get up on her toes and heels, squat and take a few steps, and walk

6  without a limp.  AR 423.  Dr. Van Kirk did not observe any sign of foot pain.  AR 423.

7      Plaintiff's range of motion was within normal limits in all regards without evidence of

8  pain.  AR 423-25.  Plaintiff demonstrated no grip strength in her left hand using the

9  dynamometer, but Dr. Van Kirk observed normal grip strength bilaterally in the course of the

10  examination.  AR 425.  Motor strength was within normal limits.  AR 425-26.

11      Dr. Van Kirk diagnosed chronic lumbosacral musculo-ligamentous strain/sprain possibly

12  associated with degenerative disc disease, but observed no evidence of carpal tunnel syndrome.

13  AR 426.  In the doctor's opinion, Plaintiff could stand and/or walk a total of six hours in an eight-

14  hour workday; sit without restrictions; lift ten pounds frequently and twenty pounds occasionally;

15  and, frequently perform postural activities.  AR 426.  To the extent that Plaintiff experienced

16  symptoms of carpal tunnel syndrome such as numbness or tingling, she could use her wrist splints

17  to keep her wrists straight.  AR 426.  Plaintiff had no manipulative or environmental limitations.

18  AR 426.

19      Dr. Van Kirk again examined Plaintiff on June 18, 2017.  AR 591-601.  Although Plaintiff

20  had not worked in the past two years, she complained of neck and back pain attributable to her

21  work.  AR 591.  Plaintiff had been injured in a motor vehicle accident (blunt injuries to the left

22  arm and shoulder and scalp lacerations) about two weeks before.  AR 591.  The examination

23  demonstrated pain and reduced range of motion of the cervical and lumbar spine and hips, and

24  Dr. Van Kirk diagnosed chronic lumbosacral musculo-ligamentous strain/sprain likely associated

25  with degenerative disc disease.  AR 594.  In the doctor's opinion, Plaintiff could stand and/or

26  walk a total of six hours in an eight-hour workday; sit without restrictions; lift ten pounds

27  frequently and twenty pounds occasionally; occasionally climb, stoop and kneel; and, never

28  ///

crouch or crawl.  AR 595. Plaintiff should not work in an extremely cold or damp environment.  AR 595.  Dr. Van Kirk opined that Plaintiff's cane was not medically necessary.  AR 595.

### 3.  **Dr. Nagata's Opinion**

In April 2017, Dr. Nagata provided a residual functional capacity questionnaire.  AR 628-29.  Dr. Nagata reported that Plaintiff had persistent foot pain resulting from corns, calluses and bunions.  AR 629.  The doctor added that because of Plaintiff's plantar foot pain she could sit for two hours at a time for a total of about six hours in an eight-hour workday, and stand/walk for less than one hour at a time for a total of two hours in an eight-hour workday.  AR 628. Plaintiff's sole postural limitation was squatting, which she could perform occasionally to frequently.  AR 628.  Plaintiff's pain cause marked limitations in the activities that precipitated her pain.  AR 629.

### B.  **Determining Residual Functional Capacity**

"Residual functional capacity is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p.  The residual functional capacity assessment considers only functional limitations and restrictions which result from an individual's medically determinable impairment or combination of impairments.  SSR 96-8p.

A determination of residual functional capacity is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).  In doing so the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment."  *Robbins*, 466 F.3d at 883.  *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence).  "The ALJ can meet this burden by setting out a detailed and

thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

The opinions of treating physicians, examining physicians, and non-examining physicians are entitled to varying weight in residual functional capacity determinations. *Lester*, 81 F.3d at 830. Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating professional may be rejected for "specific and legitimate" reasons. *Id.* at 830. However, the opinions of a treating or examining physician are "not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

## C.      The ALJ Properly Analyzed Evidence in the Record as a Whole

"[A]n ALJ is responsible for determining credibility and resolving conflicts in medical testimony." *Magallanes*, 881 F.2d at 750. An ALJ may choose to give more weight to opinions that are more consistent with the evidence in the record. 20 C.F.R. §§ 404.1527(c)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion").

Although the ALJ did not include Plaintiff's calluses, bunions and hammer toe among her severe impairments at step two, *See* AR 26-27, Plaintiff does not challenge this determination.

In summarizing Plaintiff's allegations at the beginning of the residual functional capacity analysis, the ALJ included among Plaintiff's alleged impairments, "feet falling arch." AR 28. Acknowledging Plaintiff's complaints, the ALJ found that Plaintiff's contentions concerning the intensity, persistence and limiting effects of her impairments were not fully consistent with the medical evidence. AR 28. She noted Plaintiff's noncompliance with the referral for physical

1    therapy to restore the range of motion of her fractured left wrist, and the history of generally

2    conservative treatment for the alleged impairments in general.  AR 29.  In addition, Plaintiff

3    engaged in normal activities of daily living, including personal care and hygiene, household

4    chores, simple cooking, using public transportation, shopping in stores, riding her bicycle and

5    going out alone.  AR 28-29.  In the absence of  evidence that any physician had prescribed the

6    cane that Plaintiff purchased for herself, and in light of Dr. Van Kirk's opinion that Plaintiff had

7    no medical necessity to use a cane, the ALJ rejected Plaintiff's allegation that she required a cane

8    to ambulate.  AR 29.  Plaintiff's appeal does not challenge the ALJ's conclusion that Plaintiff's

9    testimony was not fully reliable.

10         Proceeding to expert medical opinion, the ALJ gave great weight to the state agency

11   physicians' opinion that Plaintiff could perform light work with additional postural limitations.

12   AR 29.  The ALJ approved of the physicians' conclusion that Plaintiff's condition had improved

13   since her prior unsuccessful application for disability benefits, and reiterated Plaintiff's benign

14   presentation on examinations and positive response to generally conservative treatment.  AR 29.

15         The ALJ also gave great weight to Dr. Van Kirk's consultative opinions that Plaintiff was

16   capable of light work with postural limitations.  AR 29.  The opinions were consistent with the

17   record as a whole, and nothing in the record supported greater limitations.  AR 29.

18         The ALJ gave little weight to Dr. Nagata's opinion, writing:

19            In his questionnaire, Dr. Nagata opined that Plaintiff had marked
             pain causing serious limitations in activities, and could stand or walk
20            about two hours in an eight-hour workday, but could work for about
             six hours each day due to plantar foot pain.  However, Dr. Nagata's
21            treatment notes indicate that Plaintiff's impairments were stabilized
             with debridement and shoe inserts.  Further, despite symptoms, the
22            claimant reported generally normal activities of daily living.  There
             is no support in the record for such a restrictive residual functional
23            capacity and this opinion is inconsistent with the treatment record as
             a whole, including the State agency determinations and both
24            consultative examination opinions.

25            AR 29 (citations to administrative record omitted).

26         Although Plaintiff would interpret her treatment and Dr. Nagata's opinion differently, the

27   Court is not required to accept Plaintiff's characterization of her treatment records.  The ALJ fully

28   supported her determination based on multiple medical opinions and the evidence of record.

Even if this Court were to accept that the record could support Plaintiff's opinion, the record amply supports the ALJ's interpretation as well.  When the evidence could arguably support two interpretations, the Court may not substitute its judgment for that of the Commissioner. *Jamerson*, 112 F.3d at 1066.

### VIII.   Conclusion and Order

Based on the foregoing, the Court finds that the ALJ's decision that Plaintiff is not disabled is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of Court is directed to enter judgment in favor of Defendant Andrew Saul, Commissioner of Social Security, and against Plaintiff Janice Draper.

IT IS SO ORDERED.

Dated:   **May 27, 2020**                    **/s/ Gary S. Austin**
                                                    UNITED STATES MAGISTRATE JUDGE

12